IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JOY COHRS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03-505-KI |
| | ) | **LEAD CASE** |
| vs. | ) | |
| | ) | |
| SALOMON SMITH BARNEY, INC. and | ) | |
| CITIGROUP GLOBAL MARKETS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | Case No. 03-506-KI |
| DAVE STAHLY and MEL DAVIS, | ) | |
| | ) | OPINION AND ORDER |
| Plaintiffs, | ) | (<u>Stahly</u> case only) |
| | ) | |
| vs. | ) | |
| | ) | |
| SALOMON SMITH BARNEY, INC. and | ) | |
| CITIGROUP GLOBAL MARKETS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Stephen F. English
David R. Foster
Thomas L. Hutchison
Bullivant Houser Bailey PC
300 Pioneer Tower
888 S. W. Fifth Avenue
Portland, Oregon  97204-2089

    Attorneys for Plaintiffs

Gilbert R. Serota
Ceide Zapparoni
Jason M. Habermeyer
Howard, Rice, Nemerovski, Canady, Falk
& Rabkin, P.C.
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024

Steven K. Blackhurst
Ater Wynne LLP
222 S. W. Columbia, Suite 1800
Portland, Oregon  97201-6618

    Attorneys for Defendants

KING, Judge:

I previously granted summary judgment in favor of defendants ("SSB") and dismissed all of plaintiffs' claims, alleged under both ERISA and the common law, with prejudice. Before the court is Defendants' Motion for Determination of Entitlement of Attorneys' Fees under ERISA (#251). SSB seeks approximately $3.9 million in attorney fees and costs not covered by the Bill of Costs.

# DISCUSSION

I.   SSB's Status as a Proper Party to Seek Fees

Plaintiffs argue that an award of fees under 29 U.S.C. § 1132(g) may be made only to an ERISA participant, fiduciary, or beneficiary. The statute states: "In any action under this subchapter (other than an action described in paragraph (2) [for unpaid employer contributions]) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Plaintiffs rely on Downey Community Hospital, 977 F.2d 470 (9th Cir. 1992), in which the court reversed the trial court's award of attorney fees to the stop-loss carrier, a defendant in a third-party claim brought by the health service provider. The court held that the stop-loss carrier was not a prevailing party under ERISA because it was neither a participant, fiduciary, nor beneficiary of the plan. Id. at 474. The court did not address the status of the party bringing the claim.

The court addressed the issue more thoroughly in Corder v. Howard Johnson & Co., 53 F.3d 225 (9th Cir. 1995). It noted that the "express language of the statute authorizes an award of attorney's fees only when the *action is brought* by one of the parties enumerated in § 1132(g)(1)." Id. at 229 (emphasis added). When that test is met, the court has the discretion to award fees to either plaintiffs or defendants, regardless of their status under ERISA. Id. 229, 230 n.3. It is immaterial if the opposing party does not fall within the enumerated classes. Id. at 231.

Here, plaintiffs are ERISA fiduciaries, one of the enumerated classes. Thus, the court has discretion to award attorney fees to SSB, as the prevailing opposing party.

II. Anti-Alienation Provision

Plaintiffs contend that ERISA's anti-alienation provision prohibits money judgments against pension plans, including a judgment awarding attorney fees under ERISA. The Act states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). SSB argues that the provision does not apply to a plan as a whole but only to individual pension accounts. Cases cited by plaintiffs only concern individual pension accounts. See, e.g., Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 376 (1990) (ERISA anti-alienation provision prohibits imposition of constructive trust on official's pension benefits to recover union funds embezzled by official from the plan).

The Ninth Circuit has awarded attorney fees against plans that were unsuccessful in litigation. See Paddack v. Morris, 783 F.2d 844 (9th Cir. 1986) (attorney fees awarded to employer that prevailed in plan's action to recover unpaid contributions). Plaintiffs note that those cases do not mention the anti-alienation provision. Plaintiffs further argue that the distinction between individual pension accounts and the plan as a whole is without consequence.

I am unconvinced by plaintiffs' arguments. I also believe that, generally speaking, a plan as a whole can withstand the payment of a fee award more easily than an individual beneficiary, who would feel an immediate impact. As the Supreme Court has noted: "The anti-alienation provision can be seen to bespeak a pension law protective policy of special intensity: Retirement funds shall remain inviolate until retirement." Boggs v. Boggs, 520 U.S. 833, 851, 117 S. Ct. 1754 (1997) (in holding that ERISA pre-empts state law allowing a nonparticipant spouse to transfer by testamentary instrument an interest in undistributed pension plan benefits) (internal quotation omitted). This quotation refers to the individual's retirement and the individual's

Page 4 - OPINION AND ORDER

funds. I conclude that this protective policy is not thwarted by allowing an award of attorney fees against the plan as a whole.

III. *Hummell* Factors

The *Hummell* factors govern the court's discretion in awarding attorney fees under Section 1132(g):

> (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances, (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions.

Honolulu Joint Local Union No. 675 v. Foster, 332 F.3d 1234, 1238-39 (9th Cir. 2003) (citing Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980)). To recognize the remedial purpose of ERISA, a prevailing *participant or beneficiary* "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Id. at 1239 (internal quotation omitted, emphasis added). Otherwise, the court is not to favor one side or the other–"the playing field is level." Estate of Shockley v. Alyeska Pipeline Service Co., 130 F.3d 403, 408 (9th Cir. 1997).

Turning to the first factor, I see no evidence of bad faith. SSB argues that plaintiffs' vigorous pursuit of an unmeritorious case constitutes culpable conduct. SSB contends that prior to filing the action, plaintiffs knew much of the information on which I based the summary judgment decision, particularly the contractual provision excluding private investments from the scope of services.

Plaintiffs point to two expert opinions in which the experts concluded that plaintiffs should prevail. There is no evidence before me, however, that plaintiffs had obtained those opinions prior to filing the action. The reports are dated two years later. Thus, I give them no weight.

There was no case law to guide plaintiffs that discussed whether a party having the duties of SSB either was or was not an ERISA fiduciary. The facts in the reported cases all varied somewhat from the facts here. Although I granted summary judgment that SSB did not have fiduciary status, in doing so I distinguished some cases on which plaintiffs relied, such as <u>Thomas, Head & Greisen Employees Trust v. Buster</u>, 24 F.3d 1114 (9th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1127 (1995). Plaintiffs were essentially arguing for an extension of the law interpreting the statutory ERISA fiduciary definition. There was enough involvement on the part of SSB–through its expertise, involvement in meetings, review and discussion of assets, and advice on other issues–to raise a good faith belief that there was a potential ERISA claim. I do not find that plaintiffs engaged in culpable conduct. Thus, the first factor slightly favors no award of fees.

The second factor is plaintiffs' ability to satisfy an award of fees. SSB filed evidence showing that the value of the plan's portfolio is somewhere between $250 million and $300 million. That number does not take into account the plan's obligations however. Plaintiffs filed a declaration from the plan's actuary stating that the plan had unfunded vested benefit liability of over $28 million, that the normal retirement benefit was reduced effective January 1, 2004, and that the hourly contribution rate increased effective April 1, 2005. The latter actions were taken to improve the plan's financial condition. The plan lost millions in its investments with Capital Consultants, Inc. In contrast, plaintiffs argue that defendant Citigroup has a market value of

almost $250 trillion.[1]  This factor has been described as the relative ability to pay.  See Paddack, 783 F.2d at 847.  There is clearly a question of whether the plan could pay the award and still be able to meet its obligations to the beneficiaries.  This factor strongly favors no award.

The third factor is whether an award of fees would deter others from acting in similar circumstances.  SSB argues that a fee award would discourage plans from asserting tenuous claims.  Plaintiffs note that trustees have a duty to take reasonable steps to protect the funds for the benefit of the participants and beneficiaries.  An award of fees might deter a frivolous claim but also might deter a good claim which should be brought.  I also note that the vigor with which SSB defended itself should deter others from filing when they should not.  Because I believe that plaintiffs generally acted in good faith, this factor slightly favors no award.

The fourth factor is whether SSB sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA.  The answer is no.  This factor favors no award.

The last factor is the relative merits of the parties' positions.  Given that this case was decided in summary judgment, this factor heavily favors an award of fees.

Balancing all five factors, I conclude that fees should not be awarded.  I am particularly persuaded by the fact that the plan is not fully funded.

IV. Costs

Fed. R. Civ. P. 54(d)(l) provides, in part: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall

---

[1] I will not attempt to sort out the relationships of the various Citigroup entities.  Suffice it to say that defendants are doing quite well.

be allowed as of course to the prevailing party unless the court otherwise directs . . . ." This rule is not read "as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 235 (1964). Expenses which may be taxed as costs against a losing party are enumerated in 28 U.S.C. § 1920:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

However, the discretion to grant costs does not include the authority to tax costs beyond those authorized by statute or contract. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). Thus, the discretion granted under Rule 54(d) allows a court to decline to tax costs, but does not authorize a court to award excess costs in the absence of a "specific congressional command." Id. at 442.

SSB seeks $83,408.96 in its Bill of Costs.

Plaintiffs raise several objections. First, plaintiffs generally argue that the ERISA anti-alienation provision prohibits an award of any costs. For the reasons stated above, I disagree.

Alternatively, plaintiffs object to many of the costs and argue for a reduction to $37,981.50. I will make general rulings and ask SSB to recalculate its costs.

Plaintiffs argue that SSB should not be able to recover costs related to the consolidated Local 11 case, which was settled with the Stipulated Order of Dismissal stating that each party shall bear its own costs. SSB relied on the consolidation order. My ruling on the next issue should also resolve this dispute.

Plaintiffs contend that SSB should not recover costs for depositions that it did not submit to the court or, more narrowly, for depositions that the court did not rely upon in the summary judgment opinion.

In Alflex Corp. v. Underwriters Lab., Inc., 914 F.2d 175, 177 (9th Cir. 1990), cert. denied, 502 U.S. 812 (1991), the Ninth Circuit held that the costs of obtaining depositions and copies of deposition transcripts were allowable under 28 U.S.C. § 1920 when the transcripts were reasonably necessary to the defendant's motion for summary judgment. Pretrial transcripts are especially necessary when the case is unusually involved and complex. Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656, 678 (9th Cir.), cert. denied, 375 U.S. 922 (1963). Depositions which were merely useful for discovery are not taxable items. Id.

The fact that items are neither introduced into evidence nor otherwise become part of the official court record does not determine whether that item was necessarily obtained for use in the case. Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc., 920 F.2d 587, 588 (9th Cir. 1990) (per curiam) (allowing costs for reproducing documents even though documents

Page 9 - OPINION AND ORDER

were not introduced as evidence to support summary judgment motion). This is also true for depositions. M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404, 1410 (7th Cir. 1991).

A deposition need not be absolutely indispensable to justify an award of costs. It must only be reasonably necessary at the time it was taken, without regard to later developments that may eventually render the deposition unneeded at the time of trial or summary disposition. Barber v. Ruth, 7 F.3d 636, 645 (7th Cir. 1993). Disallowing costs for depositions not used at trial, however, is within the court's discretion. Wash. State Dept. of Transp. v. Natural Gas Co., 59 F.3d 793, 806 (9th Cir. 1995).

I acknowledge that this was a very complex case with numerous witnesses taking part in events over many years. I wish to seek a balance in determining if a particular deposition was necessary at the time it was taken as opposed to one that was useful for discovery but not truly necessary. After considering the case law, I will allow costs for depositions that were filed with the court, either as part of the summary judgment proceedings or in support of another motion. Costs for all volumes of a witness's deposition may be recovered, even if pages from only some of the volumes were filed. And in case these witnesses do not fall within that rule, I award costs for the depositions of all trustees at the time, Mort Zalutsky, Bonnie Haslett, and Bill Chambers. The same rule will apply to subpoena fees and hearing transcripts.

I will not award costs to cover the pro hac vice fees. SSB's choice of counsel was obviously a wise one but the company was not compelled to retain counsel from outside this District.

Plaintiffs object to the $38,011.66 sought as costs for copies (detailed in Zapparoni Decl. Ex. E-1). SSB contends that all costs are reasonable and that the copying was necessary for use in the case.

SSB is correct that copying costs for documents produced in discovery, as well as the court's copies of documents filed to support motions, are held to be reasonably necessary for use in a case and thus are routinely awarded in this court. See, e.g., Kibbee v. City of Portland, No. CV98-675-ST, 2000 WL 1643535, at *4 (D. Or. Oct. 12, 2000). Extra copies of filed papers, correspondence, and copies of cases are considered to be made for the convenience of attorneys and thus are not taxable. Id. This breakdown of costs is followed in other jurisdictions. See, e.g., Voight v. Subaru-Isuzu Automotive, Inc., 141 F.R.D. 99, 103 (N.D. Ind. 1992).

SSB produced documents on CDs that had been scanned, at 16 cents a page; processed for optical character recognition, at 8 cents a page; electronically endorsed, at 1 cent a page; and written to a CD at $25 per CD. This is in comparison to the documents filed with the court for which SSB seeks to recover 15 cents a page.

For the documents electronically produced, as detailed in the Zapparoni Decl. Ex. E-1, I will not allow the cost of the optical character recognition. Although I do not doubt that this is helpful for a case with this many documents, it is for the convenience of the attorneys. I will allow the costs for scanning the pages, electronic endorsement, and CD creation. Although these combined costs are slightly higher than the 15 cents per page SSB seeks for traditional paper copies, they are well within the range of cost per page sought and awarded to other firms which apparently have higher copying costs than defense counsel. I also acknowledge that at some

number of documents, electronic production moves from a convenience factor to a reasonable necessity.

I award the copying costs stated in Zapparoni Decl. Exs. E-2 and F, $1,941.60 and $1,141.95 respectively, for third-party production and documents filed with the court.

## CONCLUSION

Defendants' Motion for Determination of Entitlement of Attorneys' Fees under ERISA (#251) is denied. The Bill of Costs (#249) is awarded to SSB as explained above. The parties are to confer on recalculated costs and file a stipulated amount by January 16, 2006. If the parties are unable to agree on the recalculation, SSB should file its version by January 16, 2006, along with an explanation of its calculation of the disputed figures. Plaintiffs may file objections by January 20, 2006.

IT IS SO ORDERED.

Dated this ____8th_____ day of December, 2005.

                                                        /s/ Garr M. King  
                                                        Garr M. King  
                                                        United States District Judge